**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

**ROY SMITH and DOROTHY SMITH,**

        **Plaintiffs,**

**-v-**                                         **Case No. 5:10-cv-360-TJC-JRK**

**JOHN ZACCO; JP & SONS**
**DEVELOPMENT CO., LLC;**
**HARDWOOD TRAILS PROPERTY**
**OWNERS' ASSOCIATION; PROPERTY**
**MANAGEMENT CONSULTANTS, INC.;**
**S. WESLEY HERREN; and DEBORAH**
**HERREN,**

        **Defendants.**

## ORDER

This cause comes before the Court on consideration of Defendants' Motion to Dismiss (Doc. No. 39), filed on November 29, 2010, to which Plaintiffs submitted a memorandum in opposition (Doc. No. 42), filed on December 13, 2010. Pursuant to Rule 12(b)(6) of Federal Rules of Civil Procedure, Defendants move the Court to dismiss Counts II, III, and IV of the First Amended Complaint (Doc. No. 35) for failure to state a claim upon which relief can be granted against them under 42 U.S.C. § 3604, of the Fair Housing Act, 42 U.S.C. § 3601 et seq. (Doc. No. 39 at 1.) After a careful consideration of the parties' submissions and relevant legal authority, the Court DENIES Defendants' Motion as explained below.

### I.     BACKGROUND

In relevant part, Plaintiffs' First Amended Complaint states the following allegations:

1

Plaintiffs Roy and Dorothy Smith ("[Plaintiffs]") are an African-American couple who sought to spend their retirement in an age-restricted, gated community called Hardwood Trails, in Ocala, Florida. . . . They were excited about the prospect of building their retirement home in the new community of Hardwood Trails, which had plenty of open space and dense trees and would ultimately provide amenities such as a clubhouse, pool, and 24-hour security gate.

In February 2004, [Plaintiffs] signed a contract with Defendant JP & Sons Development Co., LLC ("JP & Sons") for the sale of one lot and the construction of a single-family residence in Hardwood Trails. Pursuant to the contract, [Plaintiffs] were required to become, and have considered themselves to be, members of Defendant Hardwood Trails Property Owners' Association ("Association"). [Plaintiffs] were among the first homeowners to purchase a home in Hardwood Trails and looked forward to the prospect of being Hardwood Trails' first occupants.

. . . Upon discovering that [Plaintiffs] are African-American, Defendant John Zacco ("Zacco"), [owner, officer, registered agent, and/or employee of Defendant JP & Sons], and JP & Sons engaged in a series of acts intended to prevent [Plaintiffs] from moving in to Hardwood Trails by, *inter alia*, delaying several months to obtain a building permit, refusing to allow [Plaintiffs] to enter their property during construction, purporting to cancel their sale contract, and refusing to close on their contract.

. . . .

Once construction on their home finally began, [Plaintiffs] observed that more rapid progress was made on the construction of homes owned by white homeowners who had signed their contracts later than [Plaintiffs].

Zacco and JP & Sons repeatedly denied [Plaintiffs] permission to do a walk-through of their home to monitor the construction progress. [Plaintiffs] witnessed other homeowners, none of whom was African-American, being freely allowed to do walk-throughs of their future homes. On the one occasion when Mr. Smith was able to obtain a key from a JP & Sons sales agent, Mr. Smith was verbally threatened by other JP &

> Sons employees who witnessed him entering his property and was forced to return the key and leave.
>
> In October 2004, Zacco, on behalf of JP & Sons, sent [Plaintiffs] a letter in which he purported unilaterally to cancel the [c]ontract, for the fabricated reason that [Plaintiffs] seemed "unhappy." Zacco, on behalf of JP & Sons, repeated the cancellation threat two weeks later, going so far as to offer to reimburse [Plaintiffs] for their travel expenses in exchange for [Plaintiffs'] agreement to abandon their plans to spend their retirement in Hardwood Trails.
>
> [Plaintiffs] later discovered, in 2006, that when Zacco learned that [Plaintiffs] are African-American, he stated to a JP & Sons sales agent, Lee Scott, that he did not know that the agent who signed [Plaintiffs'] contract had sold the [p]roperty to a "nigger" and that he was upset to find out that [Plaintiffs] are African-American.
>
> Aware that they were the only African-American homeowners in Hardwood Trails, that white homeowners were not treated in a similar manner, and that there was no legitimate basis for Zacco's deliberate efforts to prevent [Plaintiffs'] attempts to purchase, use, and enjoy property in Hardwood Trails, in December 2004 [Plaintiffs] filed a complaint ("2004 Complaint") against Zacco and JP & Sons with [the U.S. Department of Housing and Urban Development] [("]HUD"[)]
> . . . .
>
> . . . .
>
> In the next few months following [Plaintiffs'] filing of the 2004 Complaint, Zacco and JP & Sons refused to complete the necessary final steps on [Plaintiffs'] home for an occupancy certificate to be issued. Zacco and JP & Sons also refused to accept payments sent by [Plaintiffs'] mortgage provider. Meanwhile, white homeowners who signed their contracts with JP & Sons after [Plaintiffs] began to move in to their finished homes.
>
> Undeterred, [Plaintiffs] expended considerable time and money to finish the County's building requirements on their own and obtained the required occupancy certificate directly from the County. Zacco and JP & Sons performed this duty for other

> homeowners in Hardwood Trails, none of whom was African-American.
>
> Three days after [Plaintiffs] finally moved in, Zacco on behalf of JP & Sons recorded a claim of lien against the [p]roperty, claiming arrears of $12,309.49 owed on the [c]ontract despite (a) JP & Sons' incomplete performance and (b) having refused to accept checks sent by [Plaintiffs'] mortgage provider. . . . Zacco on behalf of JP & Sons pursued this baseless lien until March 2007, at which time the lien was released. [(footnote omitted)].
>
> Pursuant to a provision in the Declaration of Covenants and Restrictions for Hardwood Trails that grants JP & Sons the exclusive assignable right to provide garbage removal service to all Hardwood Trails homeowners, JP & Sons provides garbage removal service through Waste Management . . . to every homeowner in Hardwood Trails except [Plaintiffs]. . . . [Plaintiffs] have witnessed JP & Sons employees waving Waste Management's truck past their home.  Unlike every other homeowner, Mr. Smith has to drive the couple's trash, in their own vehicle, to the local dump.
>
> Zacco and JP & Sons have prevented [Plaintiffs] from obtaining cable television service from Bright House Networks, LLC ("Bright House"), the only provider authorized by JP & Sons to provide this service in Hardwood Trails, pursuant to the Declaration of Covenants and Restrictions.
>
> . . . .
>
> [Plaintiffs] did not receive a single invoice from the Association for [any] charges until March 2008, almost three years after they became residents of Hardwood Trails.  The next invoice that they received was sent 18 months later, in September 2009.  [Plaintiffs] are aware that other Hardwood Trails homeowners, who are not African-American, have received monthly invoices from the Association and/or PMC, [the company that manages Harwood Trails], and its agents on behalf of the Association regarding membership dues and other assessments.
>
> Desiring to remain in good stead as members of the Association, [Plaintiffs] nonetheless sent numerous checks to

>    the Association for membership dues and other assessments.
>    Most of these checks were never cashed.
>
>    . . . .
>
>    Starting in April 2008, Zacco on behalf of JP & Sons began
>    billing [Plaintiffs] for garbage removal and cable television,
>    even though [Plaintiffs] continue to be denied these services.
>    [Plaintiffs] have nonetheless sent monthly payments, some of
>    which Zacco and/or JP & Sons refused to cash. . . .
>
>    The Declaration of Covenants and Restrictions provides that
>    membership in the Association is appurtenant to and
>    inseparable from ownership of any lot in Hardwood Trails. . . .
>    Zacco and/or the Association have intentionally excluded and
>    continue intentionally to exclude [Plaintiffs] from official
>    meetings of the Association, including meetings at which
>    elections have taken place.  This intentional exclusion has
>    prevented [Plaintiffs] from voting in elections that were open to
>    other members and has denied Mr. Smith an opportunity to run
>    for a position on the Board.
>
>    PMC, S. W. Herren, [owner, officer, registered agent, and/or
>    employee of PMC], and D. Herren, [owner, officer, registered
>    agent, and/or employee of PMC], are responsible for managing
>    Hardwood Trails on behalf of the Association.   These
>    Defendants have not informed [Plaintiffs] of official
>    Association meetings. . . .
>
>    . . . .
>
>    At an Association meeting held in February 2010, to which
>    [Plaintiffs] were not invited, the Association adopted an
>    amendment to the Association's Bylaws that authorizes the
>    Board to impose a "special assessment" against any
>    homeowner who pursues any legal action against the
>    Association, its officers, and/or its directors.  The Association
>    adopted this amendment with knowledge that [Plaintiffs] had
>    filed HUD complaints against Zacco, the Association, JP &
>    Sons, and . . . S. W. Herren. . . .
>
>    . . . .

> In late April and early May 2010, [Plaintiffs were intentionally locked out of Hardwood Trails for a period of six days and five nights.
>
> . . . Anticipating that the electronic gate would become operational at some point, [Plaintiffs] first requested a remote opener and access code as early as 2005. They repeated this request regularly, including in a letter sent to D. Herren and the Association by certified mail on April 19, 2010. The Association, PMC, S. W. Herren, and D. Herren never responded to [Plaintiffs'] requests.
>
> There is only one entrance to Hardwood Trails. On or around April 26, 2010, shortly after [Plaintiffs] filed the 2010 HUD complaint against the Association and its officers, the electronic gate positioned at this sole entrance became operational for the first time.
>
> Once the gate was closed, homeowners could only enter the community with a remote opener and access code. Before making the gate operational on April 26, 2010, Defendants Zacco, the Association, PMC, S. W. Herren, and D. Herren ensured that every other homeowner except for [Plaintiffs] had a remote opener and access code.
>
> [Plaintiffs] were away on April 26, 2010, when the gate was first closed. When they returned to Hardwood Trails on April 30, 2010, they found the gate locked and could not enter. Their names were not listed in the electronic directory of the newly installed call box. [Plaintiffs] sat outside the gate for approximately thirty minutes, but neighbors who saw [Plaintiffs] waiting at the gate did not let them in.
>
> [Plaintiffs] were forced to spend five nights in a hotel while they sought assistance from the Marion County Sheriff's Office. A sergeant finally succeeded in obtaining an access code for [Plaintiffs] and ordered PMC, S. W. Herren, and/or D. Herren to provide [Plaintiffs] with remote openers. [Plaintiffs] were finally able to enter Hardwood Trails on May 5, 2010.

(Doc. No. 35 ¶¶ 2-61) (paragraph numbers omitted).

## II.   STANDARD OF REVIEW ON A MOTION TO DISMISS

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The federal rule does not require "detailed factual allegations," but "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)) (internal quotations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

In considering a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a court limits its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (internal citations omitted). The alleged facts in the complaint must be accepted as true and be construed in the light most favorable to the plaintiffs. *Castro v. Sec'y of Homeland Sec.*, 472 F.3d 1334, 1336 (11th Cir. 2006) (quoting *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003)).

### III. ANALYSIS

**a. Parties' Positions**

In their Motion, Defendants argue that Plaintiffs' claims for violation of 42 U.S.C. § 3604(a), (b), and (c) of the Fair Housing Act, as alleged in Counts II, IV, and III, respectively, should be dismissed because the statute prohibits discrimination in the sale or rental of dwellings, not housing discrimination arising and occurring subsequent to the sale or rental. (Doc. No. 39 at 3) (citing *Jackson v. Okaloosa Cnty., Fla.*, 21 F.3d 1531, 1536-38, 1542 (11th

Cir. 1994)).  While relying on *Halprin v. Prairie Single Family Homes of Dearborn Park Association*, 388 F.3d 327, 329 (7th Cir. 2004), Defendants assert that congressional intent in passing the Fair Housing Act was solely to address the discrimination in access to housing, not the treatment of protected classes once they were allowed such access.  (Doc. No. 39 at 2.)  According to Defendants, questions raised in Counts II, III, and IV concern post-sale, post-construction, post-occupancy occurrences, such as uncashed checks, lack of information about meetings, exclusion from meetings and elections, and temporary inability to operate entrance gate, none of which is "connected or associated with availability of a residential dwelling for Plaintiffs in Hardwood Trails community, nor amounts to an actual or constructive eviction from their home."  (*Id.* at 5.)  In addition, Defendants state that Plaintiffs do not allege that they have been hindered in an effort to acquire a dwelling or that any actual or constructive eviction has occurred.  (*Id.*)

In their Response, Plaintiff argue that Defendants' reliance on *Halprin* decision is misplaced in light of the Seventh Circuit's issuance of *Bloch* opinion, which specifically limited the reach of the court's holding in *Halprin*.  (Doc. No. 42 at 4.)  *Halprin* involved plaintiffs who complained that the fellow members of the homeowners' association vandalized the plaintiffs' property because they were members of a certain religion.  388 F.3d 327, 328 (7th Cir. 2004).  The court concluded that this post-sale religious-based harassment could not be challenged pursuant to § 3604(b) and (c), because the Fair Housing Act for the most part only concerned "*access* to housing."  *Id.* at 329 ("Behind the Act lay the widespread practice of refusing to sell or rent homes in desirable residential areas to members of minority groups. Since the focus was on their exclusion, the problem of how they were

treated when they were included, that is, when they were allowed to own or rent homes in such areas, was not at the forefront of congressional thinking.").

Five years later, acknowledging that *Halprin* holding was too broad, the Seventh Circuit, sitting *en banc*, noted,

> Prohibiting discrimination at the point of sale or rental but not at the moment of eviction would only go halfway toward ensuring availability of housing. A landlord would be required to rent to an African-American but then, the day after he moves in, could change all the locks and put up signs that said, 'No blacks allowed.' That clearly could not be what Congress had in mind when it sought to create 'truly integrated and balanced living patterns.'

*Bloch v. Frischholz*, 587 F.3d 771, 776 (7th Cir. 2009) (internal citation omitted). The court further concluded that "§ 3604(a) may reach post-acquisition discriminatory conduct that makes a dwelling unavailable to the owner or tenant, somewhat like a constructive eviction." *Id.*; *see also Evans v. Tubbe*, 657 F.2d 661, 662-63 and n.3 (5th Cir. 1981)[1] (noting that "the plaintiffs have stated arguably valid, federally-justiciable Fair Housing Act claims pursuant to 42 U.S.C. §[] 3604 . . . ," where defendants allegedly deprived plaintiff-landowner access to his property on account of race by erecting a metal gate and not giving a key to plaintiff).

As to § 3604(b), the Seventh Circuit in *Bloch* similarly concluded that it could be applied to post-sale discrimination, reasoning that the agreement signed with the homeowners' association was a term or condition of sale where homeowners subjected their rights to the restrictions imposed thereunder, and as such "§ 3604(b) prohibits the [homeowners' a]ssociation from discriminating against the [homeowners] through its

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit decided prior to the close of business on September 30, 1981.

9

enforcement of the rules, even facially neutral rules." 587 F.3d at 780; *see also Savanna Club Worship Serv., Inc. v. Savanna Club Homeowners' Ass'n, Inc.*, 456 F. Supp. 2d 1223, 1231 (S.D. Fla. 2005) (noting that where homeowners agree to be governed by a homeowners' association, "certain 'provision of services' are associated with home ownership within these type of communities as contemplated by the HUD Regulation, and so complete deprivation of these services, even post-acquisition, would be addressable under the FHA"). In fact, the regulations promulgated by the HUD "explain that § 3604(b)'s protections extend to prohibit '[l]imiting the use of privileges, services or facilities associated with a dwelling because of race . . . of an owner, tenant or a person associated with him or her.'" *Id*. at 780-81 (quoting 24 C.F.R. § 100.65(b)(4)).[2]

Lastly, Plaintiffs argue that § 3604(c) likewise is applicable to post-sale housing discrimination. (Doc. No. 42 at 18.) In support of their argument, Plaintiffs cite several opinions decided in federal courts around the country, such as *Haynes v. Wilder Corporation of Delaware*, 721 F. Supp. 2d 1218 (M.D. Fla. 2010) (ruling that a current tenant is allowed to proceed past summary judgment on her § 3604(c) claim where an agent of the defendant property management company at her apartment complex used abusive verbal tirade when the tenant asked him to open the door for her), *Harris v. Itzhaki*, 183 F.3d 1043, 1054 (9th Cir. 1999) (deciding that a current tenant was entitled to proceed past summary judgment on her claim that a racially biased statement by the landlord's agent violated § 3604(c)), and *Mayers*

---

[2] Although not mandatory on this Court, the United States Supreme Court has recognized that HUD's views about the meaning of the FHA are entitled to "great weight." *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 210, 93 S. Ct. 364, 34 L. Ed. 2d 415 (1972).

*v. Ridley*, 465 F.2d 630, 633 (D.C. Cir. 1972) (*en banc*) (rejecting an argument that § 3604(c) is limited to pre-sale advertisements) to name a few.[3]

Further in support of their arguments, Plaintiffs cite to two cases decided by the Eleventh Circuit, in which the court entertained challenges to post-acquisition housing discrimination under § 3604. (Doc. No. 42 at 8) (citing to *Dixon v. Hallmark Cos., Inc.*, 627 F.3d 849 (11th Cir. 2010) and *Massaro v. Mainlands Section 1 & 2 Civic Ass'n, Inc.*, 3 F.3d 1472 (11th Cir. 1993)). Plaintiffs additionally assert that Defendants' reliance on *Jackson*, the only Eleventh Circuit authority cited by them, is inapposite and provides no guidance on the application of § 3604(a) because the court there grappled with a claim of housing discrimination under § 3604(a) where the city failed to permit the construction of a housing development; the facts at issue did not require the court to reach the question of whether § 3604(a) applies to post-sale or post-rental housing discrimination. (*Id.* at 8 n.6.)

### b. The Court's Ruling

After a thorough and careful consideration of Defendants' Motion to Dismiss (Doc. No. 39), Plaintiffs' Response (Doc. No. 42), and the relevant legal authority, this Court fully agrees with Plaintiffs, and holds that Plaintiffs have sufficiently alleged claims under § 3604(a), (b), and (c), and DENIES Defendants' Motion. Accepting the facts as true, Plaintiffs' First Amended Complaint sufficiently alleges that Defendants violated § 3604(a) and (b) by: (1) participating in the lock-out during which Plaintiffs' home was unavailable to them; (2) intentionally excluding Plaintiffs from Association meetings; and (3) refusing to accept Plaintiffs' payments and harassing them with the threat of lien proceedings. Finally, the First Amended Complaint also states a claim upon which relief can be granted under §

---

[3] *See also* 24 C.F.R. § 100.75(b) ("The prohibitions in this section shall apply to all written or oral notices or statements by a person engaged in the sale or rental of a dwelling.")

3604(c), by alleging that Defendants violated this subsection "by failing to notify Plaintiffs of official Association meetings, contrary to their standard practice of informing every other Hardwood Trails homeowner, none of whom is African-American, about such meetings in writing."[4]   (Doc. No. 42 at 18.)

### IV.   CONCLUSION

Based on the foregoing, it is ordered as follows:

1. Defendants' Motion to Dismiss Counts II-IV of First Amended Complaint (Doc. No. 39), filed on November 29, 2010, is DENIED.

2. Defendants are hereby ordered to file an ANSWER to Counts II, III, and IV of the First Amended Complaint no later than thirty (30) days after the date of this Order.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida on March 8, 2011.

*[signature]*
ANNE C. CONWAY
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Party

---

[4] Of course, the Court does not vouch for these allegations, but it must accept them as true for the purposes of deciding this Motion.

12